UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES A. WILLITTS, SR., | * |
| Plaintiff, | * |
| v. | *   Civil Action No. 20-cv-11255-ADB |
| ENGIE NORTH AMERICA INC., | * |
| Defendant. | * |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff James A. Willitts, Sr., who is proceeding *pro se*, brings this action against his former employer, Defendant Engie North America Inc. ("Engie"). [ECF No. 14 ("Am. Compl.")]. Willitts alleges, among other things, that Engie discriminated against him and interfered with certain of his federally-protected rights. [Id.]. Currently before the Court are Engie's motion to dismiss, [ECF No. 17], Willitts' motion for leave to file a second amended complaint, [ECF No. 19], and Willitts' motion for corporate disclosure, [ECF No. 21]. For the reasons set forth below, Engie's motion, [ECF No. 17], is GRANTED in part and DENIED in part, and Willitts' motions, [ECF Nos. 19, 21], are DENIED.

I.   **BACKGROUND**

   A.   **Factual Background**

For purposes of this Order, the Court draws the relevant facts from Willitts' operative complaint, [Am. Compl.], and views them in the light most favorable to him, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

On April 22, 2014, Willitts began working for GDF Suez Energy North America Inc. ("GDF Suez") at the Pinetree Power Fitchburg Biomass Generating Plant (the "Plant").[1] [Am. Compl. at 1].[2] GDF Suez management began harassing Willitts soon after he started working at the Plant. [Id. at 2]. Specifically, management encouraged Willitts to badmouth his shift supervisor, whom management had falsely accused of performing poorly and causing issues at the Plant. [Id.]. When Willitts refused to speak ill of his shift supervisor, management got angry and retaliated. [Id.]. Willitts and "Dennis" formed the strongest shift at the Plant, avoiding human error, safety violations, and turbine trips.[3] [Id. at 2]. To punish Willitts, management split them up, and Willitts was forced to work under Mike O'Rourke, who was unskilled, likely had his job only because he was friends with a plant manager, and was the worst shift supervisor that Willitts had ever worked with. [Id.]. When Willitts complained about O'Rourke—for making racist comments and being incompetent—management told Willitts that O'Rourke was "funny" and encouraged Willitts to "grow some thick skin." [Id. at 2–3].

Sometime in the spring or summer of 2015, the Plant's employees voted on whether to unionize. [Am. Compl. at 2]. Management retaliated against employees, including Willitts, who voted in favor of unionization, falsely accusing them of performance issues and threatening termination. [Id. at 2, 7–8]. This exacerbated Willitts' existing struggles with depression, anxiety, and stress. [Id. at 8]. To cope, he began seeing a psychiatrist, who diagnosed him with

---

[1] Based on the parties' filings, it appears as though GDF Suez changed its name to Engie in 2016. Willitts seemingly wishes to sue both entities, but it is unclear whether GDF Suez still exists. Moreover, there was only one summons returned executed, [ECF No. 10], and Engie represents that it was the entity served with the complaint, see [ECF No. 17 at 1 n.1].

[2] The Court cites to the amended complaint by page numbers because certain allegations do not have a corresponding paragraph number.

[3] It is unclear whether "Dennis" was Willitts' colleague or supervisor.

Attention Deficit Hyperactive Disorder ("ADHD"). [Id.]. He then told Engie about his ADHD diagnosis. [Id.]. Still irritated with Willitts for voting in favor of unionization, Engie management solicited complaints about Willitts, both general ones and ones related to his ADHD, from his shift supervisors. [Id.].

At a September 9, 2016 meeting, Willitts' manager criticized Willitts' job performance and described his attitude as poor even though Willitts' performance had not been questioned before and there was nothing in his personnel file that reflected poor performance. [Am. Compl. at 5]. The manager told Willitts that he was being issued a written warning, which had already been passed along to Engie's corporate human resources department in Houston, Texas. [Id.]. Under Engie's disciplinary procedures, a written warning should have been preceded by two verbal warnings, documented in Willitts' personnel file, and a formal discussion. [Id. at 5–6]. Willitts was also demoted and forced to work under a newly-promoted supervisor, whom Willitts had recently seen violate safety procedures. [Id. at 6]. This incident gave Willitts panic attacks and caused him severe anxiety and stress. [Id.].

On or around September 15, 2016, Willitts requested medical leave under the Family and Medical Leave Act ("FMLA").[4] [Am. Compl. at 3]. Engie falsely described his claim as non-work-related, and opened and closed it quickly, and then misled Willitts by suggesting to him that his claim was still open when it had already been closed. [Id.]. On December 6, 2016, Engie terminated Willitts even though he was still under medical care and would not be able to return to work until January 1, 2017. [Am. Compl. at 3].

---

[4] Although the complaint is not clear, it appears as though Willitts requested FMLA leave based on his ADHD, depression, anxiety, and/or stress.

On March 24, 2017, Willitts filed a complaint against Engie with the Massachusetts Commission Against Discrimination ("MCAD"), [Am. Compl. at 1], and on May 5, 2020, the MCAD dismissed his claim, [id. at 4].  Since his termination, Willitts has been unable to find another job in the power generation business because Engie has disseminated false information about him to prospective employers.  [Id.].  Additionally, he has continued to suffer from depression, anxiety, and stress.  [Id. at 7].

B.     **Procedural Background**

Willitts initiated this action on June 30, 2020.  [ECF No. 1].  After the Court granted Engie's motion for a more definite statement, [ECF No. 13], Willitts filed the operative, six-count complaint on December 29, 2020, [Am. Compl.].  He brings the following claims: (1) abuse of power (Count I), [id. at 5–7]; (2) breach of confidentiality (Count II), [id. at 7–9]; (3) "civil rights action" (Count III),[5] [id. at 9]; (4) intentional infliction of emotional distress ("IIED") (Count IV), [id. at 9–10]; (5) invasion of privacy (Count V), [id. at 10–11]; and (6) "discrimination" (Count VI),[6] [id. at 11–12].  Engie moved to dismiss on January 19, 2021. [ECF No. 17].  On February 3, 2021, Willitts opposed the motion to dismiss, [ECF No. 20], and sought leave to file a second amended complaint, [ECF No. 19].  Additionally, two days later, Willitts moved for a corporate disclosure statement.  [ECF No. 21].

---

[5] Willitts seemingly seeks to bring claims for violations of the Massachusetts Civil Rights Act ("MCRA") and the National Labor Relations Act ("NLRA").  [Am. Compl. at 9].

[6] Willitts appears to assert claims under the Americans with Disabilities Act ("ADA"), the Health Insurance Portability and Accountability Act ("HIPAA"), the FMLA, Massachusetts General Laws Chapter 151B, § 4, and the Age Discrimination in Employment Act ("ADEA"). [Am. Compl. at 11–12].

## II. ENGIE'S MOTION TO DISMISS

### A. Legal Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible . . . ." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which

5

need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

> Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings.  Where the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to sketch a factual predicate that would warrant the application of either a different statute of limitations period or equitable estoppel, dismissal is appropriate.

Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (alteration in original) (citations and internal quotation marks omitted).

Because Willitts is proceeding *pro se*, the Court holds his "pleadings to less demanding standards than those drafted by lawyers and endeavors, within reasonable limits, to guard against the loss of *pro se* claims due to technical defects."  Santiago v. Action for Bos. Cmty. Dev., Inc., No 17-cv-12249, 2018 WL 5635014, at *2 (D. Mass. Oct. 31, 2018) (quoting Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008)).  The Court also must generously construe the arguments in Plaintiff's briefing.  Bahiakina v. U.S. Postal Serv., 102 F. Supp. 3d 369, 371 (D. Mass. 2015) ("[A] document filed *pro se* is to be liberally construed . . . ." (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007))).  However, a *pro se* litigant still must comply with procedural and substantive law.  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  Dismissal of a *pro se* complaint is appropriate when the complaint fails to state an actionable claim.  Muller v. Bedford VA Admin. Hosp., No. 11-cv-10510, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013) (citing Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001)).

**B.     Discussion**

Engie moves to dismiss all six counts pursuant to Federal Rule of Civil Procedure 12(b)(6).  [ECF No. 17].  Willitts opposes the motion in its entirety.  See [ECF No. 20].

1.      Count I: Abuse of Power

Engie argues that abuse of power is not a cognizable cause of action and, even if it were, it would be time-barred.  [ECF No. 18 at 4, 4 n.4].  Willitts responds that he intended to assert an abuse of process claim and that because he timely filed his MCAD complaint, which included his abuse of process-related allegations, there is no statute of limitations issue.  [ECF No. 20 at 1, 3–4].

Given that Willitts is proceeding *pro se*, the Court will credit Willitts' representation that he intended to assert an abuse of process rather than an abuse of power claim.  See Santiago, 2018 WL 5635014, at *2.  Even viewing the claim as one for abuse of process, however, the allegations in the complaint are deficient.  In Massachusetts, the "elements of an abuse of process claim are that: '(1) "process" was used; (2) for an ulterior or illegitimate purpose; (3) resulting in damage.'"  Harnois v. Univ. of Mass. at Dartmouth, No. 19-cv-10705, 2019 WL 5551743, at *12 (D. Mass. Oct. 28, 2019) (quoting Gutierrez v. Mass. Bay Transp. Auth., 772 N.E.2d 552, 563 (Mass. 2002)).  "Cases recognizing abuse of process claims have been limited to three types of process: writs of attachment, the process used to institute a civil action, and the process related to bringing criminal charges."  Id. (quoting Alphas Co. v. Kilduff, 888 N.E.2d 1003, 1013 (Mass. App. Ct. 2008)).  Here, Willitts' claim, which is largely based on Engie's failure to abide by its internal disciplinary policies, [Am. Compl. at 5–6], and its decision to demote him, [id. at 6], does not allege that Engie sought a writ of attachment, sued him in a civil action, or initiated criminal charges against him.  Willitts cannot sustain an abuse of process

claim without allegations of any process. Because Willitts' claim fails as a matter of law, Engie's motion to dismiss Count I is GRANTED.

### 2. Count II: Breach of Confidentiality

With regard to Count II, Engie asserts that Massachusetts does not recognize a claim for breach of confidentiality and that, even if it did, Willitts' claim would be time-barred. [ECF No. 18 at 4, 4 n.5]. Willitts counters that there is a cause of action for breach of confidentiality and that his claim is not time-barred because his timely-filed MCAD complaint tolled any statute of limitations. [ECF No. 20 at 4].

Willitts bases his breach of confidentiality claim on the fact that his managers disclosed his ADHD to his shift supervisors without his permission. [Am. Compl. at 8]. The Court is not aware of a state or federal cause of action that provides redress for an employee who has voluntarily provided health information to an employer who subsequently shared the information with other employees. Further, the authority that Willitts cites, see [ECF No. 20 at 4], does not support his position. In Alberts v. Devine, the Massachusetts Supreme Judicial Court ("SJC") held that:

> unless faced with a serious danger to the patient or to others, a physician owes a patient a duty not to disclose without the patient's consent medical information about the patient gained in the course of the professional relationship, and the violation of that duty gives rise to a civil action for whatever damages flow therefrom [and] a civil action will lie against anyone who, with the requisite state of mind, induces a violation of the physician's duty of confidentiality and thereby causes injury or loss to the patient . . . .

479 N.E.2d 113, 115 (Mass. 1985). Here, because there was no disclosure by a physician, this case is inapposite. Similarly, the statute that Willitts cites, Massachusetts General Laws Chapter 112, § 129A, also does not support his claim against Engie because it concerns a psychologist's duties of confidentiality and does not apply more generally to an employer. Finally, Willitts' argument that his Engie managers violated HIPAA does not save his claim because it is well

established that HIPAA does not create a private right of action.  See Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009); Spencer v. Roche, 755 F. Supp. 2d 250, 271 (D. Mass. 2010).

Thus, because Willitts has failed to state a claim for breach of confidentiality, Engie's motion to dismiss Count II is GRANTED.

### 3. Count III: Civil Rights Action

Willitts bases Count III on Engie's conduct in connection with the vote to unionize the Plant's employees.  [Am. Compl. at 9].  In support, he cites the MCRA's prohibition on threats, intimidation, and coercion and his view that the NLRA guarantees him a right to join a union without interference, restraint, or coercion.  [Id.].  Engie responds that Willitts' MCRA claim is time-barred and that the National Labor Relations Board ("NLRB") has exclusive jurisdiction over a claim under the NLRA for unfair labor practices.  [ECF No. 18 at 5–6].  Willitts does not address Engie's NLRB argument, but maintains that his claim is not time-barred because of his timely-filed MCAD complaint.  [ECF No. 20 at 4–5].

MCRA claims are subject to a three-year statute of limitations.  See Mass. Gen. Laws ch. 260, § 5B ("Actions arising on account of violations of any law intended for the protection of civil rights . . . shall be commenced only within three years next after the cause of action accrues."); Watson v. Mita, No. 16-cv-40133, 2017 WL 4365986, at *3 (D. Mass. Sept. 29, 2017) ("The Massachusetts Civil Rights Act is subject to the three-year limitations period . . . ."). "The MCRA statute of limitation begins running once a plaintiff knows or has reason to know of the alleged wrongful acts."  Sampson v. Town of Salisbury, 441 F. Supp. 2d 271, 275 (D. Mass. 2006).  Here, where the alleged misconduct in connection with the union vote took place in

2015, [Am. Compl. at 7–8], Willitts was required to bring his MCRA claim no later than 2018.[7]

He did not file his complaint in this case until June 2020. Accordingly, his MCRA claim is time-barred.[8]

Willitts' NLRA claim also fails.

> When a claim is brought regarding conduct which is arguably protected or prohibited by the NLRA, federal court jurisdiction is generally preempted by the jurisdiction of the [NLRB]. In San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, the Supreme Court explained that the purpose of giving the NLRB exclusive jurisdiction over such matters was to allow for a specialized central agency to adjudicate them so as to avoid incompatible and conflicting rulings. Conduct which constitutes an unfair labor practice is covered by the NLRA, and, consequently, the NLRB has exclusive jurisdiction over it as long as it does not violate a separate federal law. Unfair labor practices are defined by § 8 of the NLRA as conduct that will interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in § 157; and by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization.

Geraigery v. Cambridge Sch. Dep't, No. 06-cv-10410, 2006 WL 8458439, at *3 (D. Mass. Dec. 18, 2006) (citations and internal quotation marks omitted), report and recommendation adopted, Order Adopting Report and Recommendations, Geraigery v. Cambridge Sch. Dep't, No. 06-cv-10410 (D. Mass. Jan. 12, 2007); see also United States v. Burhoe, 871 F.3d 1, 7 (1st Cir. 2017)

---

[7] Willitts has not argued that he did not know or have reason to know about the allegedly wrongful acts when they occurred in 2015 (nor could he credibly do so). For that reason, the statute of limitations began to run in 2015.

[8] Willitts cites no authority for the proposition that because he filed a complaint with the MCAD, the MCRA's statute of limitations is inapplicable to his claim. See [ECF No. 20 at 4–5]. First, Willitts has not explained why he was required to (or had the option of) filing an MCAD complaint instead of initiating a civil action. Second, although MCAD complaints generally must be filed within 300 days of the allegedly unlawful conduct, see Brader v. Biogen Inc., 983 F.3d 39, 60 (1st Cir. 2020), Willitts did not file his until March 2017, [Am. Compl. at 1], more than a year after Engie's managers allegedly threatened, intimated, or coerced him in connection with the union vote, see [id. at 7 (alleging union vote in "Spring and into the Summer of 2015")]. Thus, at least with respect to alleged misconduct related to the union vote, his MCAD complaint was not timely filed.

(noting that when conduct is subject to § 7 or § 8 of the NLRA, federal courts must generally defer to the exclusive competence of the NLRB).  Here, because Willitts alleges that Engie interfered with rights guaranteed by the NLRA, the NLRB has exclusive jurisdiction over his claim.

In sum, Willitts' MCRA and NLRA claims both fail, and Engie's motion to dismiss Count III is therefore GRANTED.

    4.  Count IV: Intentional Infliction of Emotional Distress ("IIED")

Engie argues that Willitts' IIED claim set forth in Count IV is time-barred and precluded by the exclusivity provision of the Workers' Compensation Act ("WCA").  [ECF No. 18 at 4, 7–9].  Willitts does not respond to Engie's WCA argument, but maintains that his IIED claim is timely because of his timely-filed MCAD complaint.  [ECF No. 20 at 4–5].

> Common law actions are barred by the exclusivity provision of the [WCA] where: the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the [WCA]; and the injury is shown to have arisen out of and in the course of . . . employment.

Green v. Wyman-Gordon Co., 664 N.E.2d 808, 813 (Mass. 1996) (quoting Foley v. Polaroid Corp., 413 N.E.2d 711, 713 (Mass. 1980)).  Here, all three conditions are satisfied.  Willitts specifically alleges that Engie employed him, [Am. Compl. at 1], emotional distress is a compensable personal injury under the WCA, see Green, 664 N.E.2d at 813; Mass. Gen. Laws ch. 152, § 1(7A) (including the intentional infliction of emotional distress as a personal injury), and Willitts' allegations make clear that his emotional distress arose from his employment, see [Am. Compl. at 9–10 (describing employment-related conduct as cause of emotional distress)].  Accordingly, Willitts' IIED claim is barred by the WCA's exclusivity provision.  See Uwakwe v. Pelham Acad., 286 F. Supp. 3d 213, 227–28 (D. Mass. 2017) (dismissing IIED claim because it was barred by the WCA's exclusivity provision); cf. Spencer v. Mass. Bay Trans. Auth., No.

17-cv-11229, 2019 WL 2394151, at *12 (D. Mass. June 5, 2019) (dismissing negligent infliction of emotional distress claim because of the WCA). Engie's motion to dismiss Count IV is therefore GRANTED.

### 5. Count V: Invasion of Privacy

In Count V, Willitts alleges that Engie denied him his right to privacy by disclosing private health information to his fellow employees at the Plant without his consent.[9] [Am. Compl. at 10–11]. Engie argues that, to the extent Willitts' complaint can be read as alleging a cause of action under Massachusetts General Laws Chapter 214, § 1B, that claim is time-barred. [ECF No. 18 at 7]. Willitts again responds that his MCAD complaint tolls any applicable statute of limitations. [ECF No. 20 at 4–5].

Although not specifically cited by Willitts, the Court presumes that he intended to bring his claim under Chapter 214, § 1B, which provides that an individual "shall have a right against unreasonable, substantial or serious interference with his privacy." Mass. Gen. Laws. ch. 214, § 1B. This claim too is time-barred because invasion of privacy claims under § 1B must be brought within three years. See Taylor v. Swartwout, 445 F. Supp. 2d 98, 104 (D. Mass. 2006); Finney v. Madico, Inc., 674 N.E.2d 655, 659 (Mass. App. Ct. 1997). An invasion of privacy claim based on the disclosure of private information accrues when the sensitive information is disclosed. See Taylor, 445 F. Supp. 2d at 104 (citing Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 681–82 (Mass. 2005)). Here, Willitts' allegations make clear that the allegedly wrongful disclosure occurred before he left the company in December 2016. See [Am. Compl. at 8–11]. The three-year limitations period therefore ended no later than December 2019,

---

[9] Willitts also cites HIPAA. For the reasons stated above, supra Section II.B.2., HIPAA does not provide a private cause of action.

months before he filed the initial complaint in this action. Accordingly, Willitts' invasion of privacy claim is time-barred, and Engie's motion to dismiss Count V is GRANTED.[10]

### 6. Count VI: Discrimination

In Count VI, Willitts seems to assert a variety of discrimination claims, including claims under the ADA, HIPAA, the FMLA, Massachusetts General Laws Chapter 151B, § 4, and the ADEA. [Am. Compl. at 11–12].

Willitts' HIPAA, FMLA, and ADEA claims each fail. First, as stated above, HIPAA does not provide a private right of action. Second, to the extent Willitts alleges an FMLA violation, that claim is barred by *res judicata* because in another litigation involving Willitts and Engie, Willitts' FMLA claim against Engie was already dismissed on the merits. See Willits v. Life Ins. Co. of N. Am., No. 18-cv-11908, 2021 WL 735784, at *5–6 (D. Mass. Feb. 25, 2021). Third, as to the ADEA claim, because Willitts makes no allegations concerning his age or the ages of any other Engie employees, see [Am. Compl.], he has failed to state a plausible ADEA claim.[11]

---

[10] As discussed above, Willitts has cited no authority supporting his contention that all relevant statutes of limitations were tolled while the MCAD reviewed his complaint, see [ECF No. 20 at 4–5], and the Court is aware of none. Further, other courts have considered whether invasion of privacy claims were timely brought notwithstanding the fact that an MCAD complaint was filed. See Finney, 674 N.E.2d at 659 (noting that plaintiff's complaint, which was filed after "the obligatory and timely filing with the [MCAD]," asserted an invasion of privacy claim, and then proceeding to evaluate statute of limitations-based arguments).

[11] In his brief opposing the motion to dismiss, Willitts states that he "would have documentation for Discovery," adding that Engie hired three younger equipment operators during his FMLA leave. [ECF No. 20 at 3–4]. First, an opposition to a motion to dismiss is not the place for new factual allegations. See Decoulos v. Town of Aquinnah, No. 17-cv-11532, 2018 WL 3553351, at *12 (D. Mass. July 24, 2018) ("[Plaintiff] cannot bolster the allegations of the Amended Complaint through the late addition of new facts in opposing a motion to dismiss."). Second, and more importantly, the fact that Engie hired three new employees that were in their 20s, while Willitts was on medical leave, in no way suggests that Engie discriminated against Willitts

With respect to Willitts' Chapter 151B claim, Engie argues that it is time-barred because the complaint in this action was filed more than three years after the alleged unlawful discrimination. [ECF No. 18 at 12]. Willitts again counters that his Chapter 151B claim is timely because of his timely-filed MCAD complaint. [ECF No. 20 at 4–5].

Pursuant to Chapter 151B § 9,

> [a]ny person claiming to be aggrieved by a practice made unlawful under [Chapter 151B] . . . or by any other unlawful practice within the jurisdiction of the commission, may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief . . . .

Mass. Gen. Laws ch. 151B, § 9. This three-year limitations period applies even if the MCAD's review of the complaint is pending. Goldstein v. Brigham & Women's Faulkner Hosp., Inc., 80 F. Supp. 3d 317, 324 (D. Mass. 2015) ("Chapter 151B clearly requires that a lawsuit must be filed within three years of the alleged unlawful practice, even if the MCAD has not finished its review of the related complaint."). "[A] plaintiff need not wait for the resolution of the MCAD investigation" before initiating a civil suit under Chapter 151B. Id. Here, Willitts seems to have believed that he could not sue until the MCAD resolved his complaint. See [ECF No. 14 at 4 ("The (MCAD) Claim was DISMISSED on May 5, 2020. The DISMISSAL allowed [Willitts] to File this Discrimination Case in Federal Court on June 30, 2020." (emphasis removed))]. Despite Willitts' error, the Court remains bound by the plain language of the statute,[12] under

---

because of his age. Plaintiffs alleging age discrimination must do more than simply allege that a younger employee was hired.

[12] Willitts also seems to argue that the three-year statute of limitations applies only in state court, see [ECF No. 20 at 3], but this argument is unavailing. As demonstrated by Goldstein, the three-year limitations period is equally applicable in federal court.

which the claim is time-barred because it is premised on alleged unlawful practices that took place more than three years before the original complaint was filed.[13]

Finally, although the complaint is not entirely clear, Willitts appears to premise his ADA claim on both Engie's failure to provide him with a reasonable accommodation and the fact that Engie demoted him in or around September 2016 because of his alleged disabilities. [Am. Compl. at 5–6, 11–12]. The elements of a reasonable accommodation ADA claim are: (1) the plaintiff is disabled within the meaning of the ADA; (2) the plaintiff could perform the job's essential functions either with or without a reasonable accommodation; and (3) the employer was aware of the disability but failed to provide a reasonable accommodation. See Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016). The elements of an ADA discrimination claim are identical except for the third element; a plaintiff must show that he was fired or otherwise adversely impacted because of his disability. See Echevarría v. AstraZeneca Pharm. LP, 856 F.3d 119, 126 (1st Cir. 2017).

Given the lenient pleading standard in civil cases and the additional deference that is afforded to *pro se* litigants, see supra Section II.A., the Court finds that Willitts' factual allegations are sufficient to state a plausible ADA claim. Although it is difficult to ascertain from the complaint what disability Willitts is referring to (i.e., depression, anxiety, stress, and/or ADHD), when precisely Willitts believes he became disabled, when he told Engie about his

---

[13] There are a handful of allegations in the complaint concerning Engie's conduct after Willitts was fired in December 2016, see, e.g., [Am. Compl. at 3 ("[Engie] continued misleading [Willitts] and [his] attorney for over three plus years while trying to settle a Claim"); id. at 4 ("[Willitts] has been told that Managers of [Engie] have made false or misleading statements to employees of ENGIE and or managers of other companies to intentionally harm [Willitts] of seeking employment with other Power Generation plants or businesses"); id. at 6 ("Engie was Falsely misleading [Willitts] to believe that the Claim was still open for years")], but Willitts has not alleged that such conduct took place after June 30, 2017, and the alleged conduct does not plausibly suggest unlawful discrimination in any case.

purported disability, and what kind of reasonable accommodation he sought, [Am. Compl. at 7–9, 11–12], the best reading is that Willitts' alleged disability is his ADHD, that he informed Engie management of his disability in or around September 2016, and that he sought a reasonable accommodation in the form of a leave of absence (or an extension of his FMLA leave). Further, Willitts' allegations suggest that he would have been able to resume working at Engie by January 2017. [Id. at 3]. In substance, Willitts has alleged that he requested an approximately four-month leave of absence from work to deal with his depression, anxiety, stress, and/or ADHD, and that, instead of providing it, Engie fired him in early December 2016. "[A] leave of absence or a leave extension can constitute a reasonable accommodation under the ADA 'in some circumstances.'" Echevarría, 856 F.3d at 128 (quoting García-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 647 (1st Cir. 2000)). Whether a leave request is reasonable is fact-dependent, see García-Ayala, 212 F.3d at 647 (citing Criado v. IBM Corp., 145 F.3d 437, 443 (1st Cir. 1998)), and therefore not susceptible to resolution on a motion to dismiss. Assuming his allegations are true, Willitts has stated a plausible ADA claim,[14] and Engie's motion to dismiss Count VI must therefore be DENIED.[15]

---

[14] Willitts has also stated a plausible ADA discrimination claim. Specifically, that Engie demoted him because of his ADHD.

[15] Engie's arguments in favor of dismissal are unpersuasive. First, Engie argues that Willitts' ADA claim must be dismissed because he has failed to adequately allege that he could perform the essential functions of his position at Engie with or without a reasonable accommodation and, in fact, has taken other action (e.g., filing workers' compensation claims) suggesting that he has been completely disabled since September 2016. [ECF No. 18 at 13–17]. Willitts' allegations, however, suggest that, with a reasonable accommodation (i.e., a leave of absence until January 2017), he could have performed his job. Further, although Engie's argument concerning Willitts' purportedly inconsistent positions may well carry the day at summary judgment, it does not carry the day at the motion to dismiss stage. Consistent with this, the cases relied upon by Engie were all decided on summary judgment. See Sullivan v. Raytheon Co., 262 F.3d 41 (1st Cir. 2001); August v. Offs. Unlimited, Inc., 981 F.2d 576 (1st Cir. 1992); [ECF No. 18 at 14–16 (citing Sullivan and August)]. Thus, while Willitts will have to explain these apparent

III.     WILLITTS' MOTIONS

Willets first moves for leave to amend his operative complaint.

A motion for leave to amend is considered under Fed. R. Civ. P. 15(a), which provides that leave to amend should be freely given when justice so requires. The limited reasons for denying a pre-judgment motion to amend include undue delay, bad faith, futility and the absence of due diligence on the movant's part.

Libby v. Park, Marion and Vernon Sts. Operating Co., 278 F. Supp. 3d 501, 504 (D. Mass. 2017) (citations and internal quotation marks omitted).

The Court can detect only three differences between the operative complaint and Willitts' proposed second amended complaint: (1) relabeling his "abuse of power" claim as an "abuse of process" claim, [ECF No. 19-1 at 7]; (2) relabeling his IIED claim as a "negligence – supervision" claim, [id. at 14]; and (3) the addition of argument concerning *res judicata* in the "Prayer for Relief" section, [id. at 18–19]. All three proposed amendments are futile. First, the Court has already construed Willitts' claim as one for abuse of process and found that he has failed to state a viable claim. See supra Section II.B.1. Second, regardless of whether Willitts' claim is for IIED or negligent supervision, it is barred by the WCA. See Choroszy v. Wentworth Inst. of Tech., 915 F. Supp. 446, 452 (D. Mass. 1996) (noting that even assuming negligent supervision is a valid tort claim under Massachusetts law, it would be barred by the WCA because that statute "prevents an employee from bringing common-law tort claims against his employer for work-related injuries unless the employee has reserved his right to do so"). Third,

---

inconsistencies at some point, he need not do so at this stage of the litigation. Second, Engie seems to argue that Willitts' ADA claim must be dismissed because he has not alleged that he received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"). [ECF No. 18 at 11–12 n.9]. This argument fails, however, because Willitts has alleged that the MCAD issued one. See [Am. Compl. at 1]; Cloutier v. City of Lowell, No. 15-cv-12780, 2015 WL 8751334, at *7 (D. Mass. Dec. 14, 2015) (noting that a plaintiff can exhaust their administrative remedies with respect to an ADA claim with the MCAD *or* the EEOC).

a complaint is not the place for legal arguments, and in any case, the argument does not change the fact that his FMLA claim has already been decided on the merits and is therefore precluded by *res judicata*. Accordingly, Willitts' motion for leave to amend, [ECF No. 19], is DENIED.

In his second motion, Willitts seeks information from Engie regarding (1) document preservation and (2) the corporate ownership of the Plant. [ECF No. 21]. Because Willitts can seek this information, to the extent it is relevant to his remaining claim, through ordinary discovery channels, his motion is DENIED as moot.

## IV.     CONCLUSION

Accordingly, for the reasons stated above, Engie's motion to dismiss, [ECF No. 17], is GRANTED in part and DENIED in part, Willitts' motion for leave to amend, [ECF No. 19], is DENIED, and Willitts' motion for corporate disclosure, [ECF No. 21], is DENIED as moot.

**SO ORDERED.**

June 7, 2021                                             /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE